## In re GRUBBS-WILEY GROCERY CO.

### Ex parte GRUBBS.

(District Court, W. D. Missouri, S. D.   June 17, 1899.)

#### No. 40.

1. BANKRUPTCY—PRIORITY OF CLAIMS—WORKMEN AND SERVANTS.

The general manager of a mercantile corporation, who has supreme authority in managing and directing its daily business affairs, and who is also a stockholder and director, and is allowed a salary of $100 per month by the board of directors for his services as manager, is not a "workman" nor a "servant" of the corporation, within the meaning of Bankruptcy Act 1898, § 64b, according priority of payment out of bankrupt estates to "wages due to workmen, clerks or servants."

2. SAME—PROVABLE DEBTS—SALARY OF MANAGER.

Where the general manager of a trading corporation, who is also a stockholder and director, has been allowed a salary for his services as manager, at a fixed monthly rate, by mere agreement of the board of directors, without any by-law or formal resolution or entry of record, he will not be entitled, as against the estate of the corporation in bankruptcy, to prove a claim for the unpaid balance of such salary (the same being several months in arrear), but only for the reasonable value of his services as determined by the court.

In Bankruptcy.   On review of decision of referee in bankruptcy in the matter of the claim of F. H. Grubbs as a creditor of the bankrupt corporation.

Massey & Tatlow, for claimant.
Sebree & Farrington, for the estate.

PHILIPS, District Judge.   The Grubbs-Wiley Grocery Company was engaged in the mercantile business at Springfield, Mo., and has been adjudged a bankrupt.   The claimant, F. H. Grubbs, at the time of the adjudication, and for several months prior thereto, was a stockholder and director in said company, and its general manager, and presents a claim against the estate for $400 for his services as such manager, and asks that the same be allowed as a preferred claim. The referee refused to allow said claim as one entitled to priority over general creditors, but did allow the same on a basis of $75 per month as the reasonable value of the claim for services, amounting in the aggregate to $225.   The claimant has appealed to this court, and asks for a review of this action of the referee.

The section of the bankrupt act relied upon by claimant is 64b, subsec. 4, which gives priority to "wages due to workmen, clerks or servants which have been earned within three months before the date of the commencement of the proceedings, not to exceed three hun-

dred dollars." The first question to be decided is, does this claimant come within either of the designated preferred persons? He does not claim that he was a clerk. The term "workmen or servants" is to be presumed to have been employed in its ordinary acceptation. Ordinarily a workman is understood to be "one who labors; one who is employed to do business for another; a worker; one who is employed in labor." Doubtless the statute has reference to a workman employed on some character of work,—laboring for some person who sustains to him the relation of an employer or master, for whom he works. So, also, the term "servant" ordinarily means a person employed by another to render personal services to the employer, between whom the relation of master and servant exists, as understood in law. This claimant was himself a stockholder in this corporation, and was one of the board of directors, and was its general manager. As such general manager he stood in the relation of vice principal of the corporation. In its management and operation he represented and stood for the corporation. Because of his service as manager commanding more of his time and attention than other directors, he was accorded by the board, of which he was a member, a salary of $100 per month. He was not a servant, as he had no master over him; being supreme in authority in managing and directing the daily business affairs of the concern; obeying the direction of no superior in his work. It is true, he was, in a certain sense, working for the corporation, the legal entity; but, in his office as director and general manager, he was the representative of the corporate body. His attitude in this respect was in no wise different from that of the president, or any other director of the corporation. The board of directors, as is frequently the case, might have voted a salary to the president for his services. Could it be maintained that he was a workman or servant of the company on a salary, entitling him, on the declaration of bankruptcy of the concern, to have his salary paid as a preferred claim? Indeed, it would present a remarkable feature of the bankrupt act, if the managing officers of a business corporation could vote themselves salaries ad libitum, and after, by their mismanagement, wrecking the company, and inviting an adjudication of bankruptcy, they could, to the exclusion of other creditors of the concern, whose money and property they had obtained on credit, come in as preferred creditors, to the exclusion of such general creditors. The act, in my judgment, admits of no such construction. Such an officer of a corporation, being one of its board of managing directors and its general manager, certainly was not in the mind of the lawmakers, and is certainly not within the spirit of the act, as a preferred creditor.

The second matter for determination is whether or not the claimant is entitled to the fixed salary which he claims the board of directors accorded him. The finding of the referee in this respect is that:

"F. H. Grubbs was a stockholder and director in said grocery company on the 20th of August, 1898; he and Wiley (another director) holding a controlling interest in said company, there being three other directors. And on said day, at a meeting of the board, said Grubbs was employed as manager of said company, at a salary of one hundred dollars per month. That there was no resolution or by-law of the corporation authorizing said salary, and no entry of record allowing said one hundred dollars per month, but the directors then and

there agreed that he should be paid this salary; being the same salary formerly paid to the director and stockholder whom he succeeded in office."

It does not appear from this statement whether or not the claimant voted or acted upon the matter of fixing his salary, nor, indeed, whether there were a sufficient number of directors present to have acted upon this matter independently of his co-operation. The facts found by the referee are that at a meeting of the board said Grubbs was employed as manager. The settled law in respect of such corporations, in the matter of fixing the compensation for such employés, is that "the compensation should be fixed by by-law or resolution before the services are actually rendered, so as to contain the necessary elements of a contract supported by sufficient consideration." Bennett v. Roofing Co., 19 Mo. App. 349–351. So it is held in Besch v. Manufacturing Co., 36 Mo. App. 333, that "the compensation of the superintendent of the corporation, who is also a director, must be fixed by corporate action, a record of which should be made upon the books of the corporation." The evidence in this case, as found by the referee, is that there was no resolution or by-law of the corporation, and no entry of record, authorizing said salary. The ruling of the court of appeals, following that of courts of other jurisdictions, is based upon grounds of public policy. As such officers are stockholders, and directly pecuniarily interested in producing the best results of wise and energetic administration, and especially as the directors sustain the relation of trustees towards the stockholders and creditors, to a certain extent, they are presumed, in the first place, to give their services freely to the administration of the affairs of the corporation; and, in the second place, while the law admits of a contract for compensating the officers in consideration of their extra services, yet, where the rights of general creditors are concerned, such creditors not being admitted into the deliberations of the governing body, the law wisely exacts that such contracts for extra compensation shall receive the formal sanction of the board of directors, as such, evidenced by the records of the corporation. The allowance, therefore, made by the referee, of $225 to this claimant, under the bankrupt act, is even more liberal than the letter of the law would sustain. The court, however, in a spirit of liberality, will allow the finding of the referee to stand.