In re ZOTTI.

Ex parte EUROPEAN AMERICAN BANK OF NEW YORK.

(District Court, S. D. New York. April 19, 1910.)

BANKRUPTCY (§ 172*)—BANK DEPOSIT—PAYMENT OF CHECKS—LIABILITY TO TRUSTEE.

Where a bank, in ignorance of the filing of a petition in bankruptcy, paid the bankrupt's checks drawn on his deposit on the day the petition was filed, such payment was not a transfer by the bank of the bankrupt's assets, nor an improper meddling with a res over which the court of bankruptcy had jurisdiction, which would permit recovery by the trustee in bankruptcy against the bank; the bankrupt's right in his deposit not being the money on deposit, but a mere chose in action against the bank, under the relation of debtor and creditor, to which it was an incident that the bank should honor sight drafts.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 172.*]

In the matter of bankruptcy proceedings against Frank Zotti, trading as Frank Zotti & Co. From a referee's order directing the European American Bank of New York to pay to the trustee the amount of certain checks, the bank files a petition for review. Reversed.

Upon a petition for a review of the referee's order herein, the question at issue, together with the evidence relating thereto and the finding and order of the referee thereon, were certified to this court on March 25, 1910. The facts are these:

On July 14, 1908, a petition in bankruptcy was filed in the United States District Court for the Southern District of New York against Frank Zotti, trading under the firm name of Frank Zotti & Co., and an adjudication in bankruptcy followed. When the bankruptcy petition was filed, and for some time prior thereto, the bankrupt had a deposit account with the European American Bank of New York City. On or about the day when the bankruptcy proceeding itself was begun, Zotti & Co. drew their check upon their deposit account for $2,000. Several smaller checks, amounting to $190.70, were drawn at about the same time. There is no proof to show just when these checks were given to the respective payees, and it was assumed by the referee that they were delivered before July 14, 1908, when the petition in bankruptcy was filed. The bank certified the $2,000 check on July 15th, and thereafter all the checks, amounting to $2,190.70 were paid through the Clearing House; the bank having no knowledge of the proceeding in bankruptcy against Zotti & Co. The trustee seeks to recover from the bank the said sum of $2,190.70, together with interest from July 15, 1908.

The referee ordered the bank to pay the amount in question to the trustee, together with the interest claimed by him, and the costs incurred in the proceeding before the referee.

Levy, Rosenthal & Heermance, for trustee.
J. Arthur Hilton, for European American Bank of New York.

HAND, District Judge (after stating the facts as above). The bankrupt's property was the chose in action against the bank. To speak of it as "money on deposit" is confessedly a colloquialism. When the petition was filed, it is said, citing Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, there was a caveat, just as any one dealing with a res once in a court of equity always takes with notice of all the results of the suit and the existing or future equities of all parties. It is not necessary here to consider how far that doctrine applies to a bankrupt who may deal with an innocent person, or whether his sales of chattels are subject to notice of all equities which may then exist or later arise.

Here the bank has not meddled with the bankrupt's assets at all. The property was, as I have said, a chose in action, to which it was an incident that the obligor should honor sight drafts. It did honor such a draft, innocently as all sides concede, and in so doing it availed itself of the conditions of the very obligation under which the trustee now sues. Of course, the trustee is subject to the same conditions, when he sues, as the bankrupt is under. One of these conditions is the right of the debtor bank to treat as a valid extinguishment pro tanto any payment made upon check.

It is only by what seems to me a confusion of the fundamental relation between the bank and the bankrupt that I can hold liable the former. The bank in no sense transferred property of the bankrupt: for it had no such property. He himself, the bank's customer, alone had any property, and that was a right to sue, subject to a condition which has occurred.

I can only conclude that the order was erroneous, and it must be reversed.