## In re QUACKENBUSH.

(District Court, D. New Jersey. July 26, 1919.)

BANKRUPTCY ⚖══348—DEBTS ENTITLED TO PRIORITY—WAGES—"WORKMAN, CLERK, TRAVELING OR CITY SALESMAN, OR SERVANT."

   Services rendered by claimant to bankrupt under a contract by which he sold a business to bankrupt and agreed to conduct it for three years at an annual salary, which covered, not only his services, but the price of the business sold, *held* not those of a "workman, clerk, traveling or city salesman, or servant," and not entitled to priority of payment under Bankruptcy Act, § 64b (4), being Comp. St. § 9648.

In Bankruptcy. In the matter of Henry L. Quackenbush, Jr., bankrupt. On review of order of referee denying John W. Hanlon's claim for priority. Affirmed.

Joseph T. Lieblich, of Paterson, N. J., for claimant.

Furst & Furst, of Newark, N. J. (George Furst, of Newark, N. J., of counsel), for trustee.

RELLSTAB, District Judge. John W. Hanlon seeks a reversal of so much of the referee's order as disallows priority of his claim for wages. Hanlon's claim is based on a written agreement made between him and the bankrupt, which reads:

"Agreement.

"Agreement made and entered into this 30th day of August, A. D. 1915, between John W. Hanlon, of the city of Paterson, county of Passaic, and state of New Jersey, party of the first part, and Harry L. Quackenbush, of the town of Pompton, township of Pequannock, county of Morris, and state of New Jersey, party of the second part, witnesseth:

"Whereas, the said party of the first part is now in possession of certain valuable knowledge and a certain business known as the trading stamp business, together with all the good will, goods and chattels, stock of trading stamps, and all other appliances appertaining to this business; and that whereas, the said parties of the second part are desirous of purchasing and obtaining the said trading stamp business and hiring and employing the said party of the first part to conduct this business: Witnesseth, therefore, that in consideration of the mutual promises of each other and the further covenants hereinafter expressed, the said parties of the second part hereby agree to purchase the business hereinbefore mentioned and employ the said party of the first part for a period of three years at an annual salary of $1,000 to be paid in weekly installments of $20 per week, and the said party of the first part in consideration of the aforementioned covenants agrees to sell to the said party of the second part, the business hereinbefore mentioned, including the good will thereof, and further agrees to accept employment and to be employed by the said party of the second part for a period of three years at an annual salary of $1,000, to be paid in weekly installments of $20 per week.

"In witness whereof we have hereunto set our hands and seals the year and date first above written.
                                    "John W. Hanlon.          [L. S.]
                                    "Harry L. Quackenbush.    [L. S.]
"Signed, sealed and delivered in the presence of
    "Joseph T. Lieblich."

The wages directed "to be paid in full" by section 64b (4) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 563 [Comp. St. § 9648]) are those "due to workmen, clerks, traveling or city salesmen, or servants." Of these "workmen" and "servants" are the more comprehensive terms, but even these cannot be given their broadest meaning, for their association with "clerks, traveling or city salesmen" negatives the idea that Congress intended them to have such scope. To hold otherwise would be to declare that all the terms used in this legislation other than the word "servant" are meaningless. Blessing v. Blanchard (C. C. A. 9) 223 Fed. 35, 37, 138 C. C. A. 399, Ann. Cas. 1916B, 341, 35 Am. Bankr. Rep. 135. Not every one rendering service is entitled to the priority of this section of the Bankruptcy Act. Campfield v. Lang (C. C.) 25 Fed. 128; Lat-

ta v. Lonsdale (C. C. A. 8) 107 Fed. 585, 47 C. C. A. 1, 52 L. R. A. 479; In re Gurewitz (C. C. A. 2) 121 Fed. 982, 58 C. C. A. 320, 10 Am. Bankr. Rep. 350; In re Albert O. Brown & Co. (D. C.) 171 Fed. 281; In re Crown Point Brush Co. (D. C.) 200 Fed. 882, 29 Am. Bankr. Rep. 638; In re Greenberger (D. C.) 203 Fed. 583, 30 Am. Bankr. Rep. 117; Blessing v. Blanchard, supra; Keyes v. Davie (C. C. A. 9) 231 Fed. 688, 145 C. C. A. 574, 36 Am. Bankr. Rep. 884; Wintermote v. McLafferty (C. C. A. 9) 233 Fed. 95, 147 C. C. A. 165, 37 Am. Bankr. Rep. 425; In re Boston French Range Co. (D. C.) 235 Fed. 916, 37 Am. Bankr. Rep. 508; In re Footville Condensed M. Co. (D. C.) 237 Fed. 136, 38 Am. Bankr. Rep. 472. To be entitled thereto, the claimant must bring himself within one of the designated classes. This he has not done.

Hanlon entered into the employment of Quackenbush pursuant to this agreement, and continued therein until the latter was put into bankruptcy. This agreement fails to state the character of the employment, and the testimony leaves much to be desired on that subject. It would seem, however, that, whatever the character of the services rendered by Hanlon, it was in connection with the "trading stamp business" which he sold to Quackenbush, and that the annual salary of $1,000 that Hanlon was to receive was the consideration which Quackenbush was to pay for the trading stamp business so acquired by him, and for the services that Hanlon was to render in connection therewith during the three-year period agreed upon. Quackenbush knew nothing of the trading stamp business, but continued to carry on his business as grocer in a small way at Riverdale, N. J. Hanlon occupied a room in Paterson, furnished by Quackenbush, where he carried on the stamp business and performed whatever services he rendered under such agreement, for the payment of a part of which he now claims priority.

While Quackenbush undoubtedly was the owner of the stamp business, it was in sole charge of Hanlon, and had all the earmarks of being a separate and distinct business. While Hanlon claims to have acted as salesman and collector, he admits that this was not in the soliciting of orders for groceries, nor in the collecting of amounts due on the sales of such goods. Whether such stamp business, admittedly capable of being used to advance the interests of different mercantile businesses, was confined to the sales of stamps to be used only in making purchases of groceries from the bankrupt, does not appear. As the burden is on the creditor who claims priority to prove that he is within the protected class, Hanlon's failure to show whether the trading stamps sold by him were so confined raises the presumption that these sales were not so restricted. The salary to be paid him, as the agreement set out shows, was not merely for his services in carrying on the stamp business, but also consideration for the sale of such business. Compensation for services so rendered is not given priority by the Bankruptcy Act.

The referee's order is affirmed.