## In re GOLDMAN STORES, Inc.
### No. 4948.

District Court, W. D. Louisiana, Monroe Division.

April 22, 1933.

Wm. Andress, Jr., and Henry Feld, Jr., both of Dallas, Tex., and O. A. Easterling, of Monroe, La., for creditors.

Shotwell & Brown, of Monroe, La., for bankrupt.

DAWKINS, District Judge.

The referee has certified to me for instructions the matter of allowing as priorities the following claims:

"Sam Goldman, President, has filed claim for $375.00 and asks that the same be recognized as a wage claim and paid by priority and preference."

"Sol Finkelstein, Secretary-Treasurer, has filed a claim for $375.00 and asks that the same be recognized and paid by priority and preference as a wage claim."

"Harry Stern has filed a claim for $450.00 and asks that the same be allowed by preference and priority for wages due October, November and December, 1932, at the rate of $150.00 per month."

The facts as found by the referee with respect to the nature of these claims are as follows:

"First: Sam Goldman is in fact President and one of the managing directors of the business of Goldman Stores, Incorporated; that he likewise sold merchandise over the counter and performed other service in the capacity of a clerk when necessary."

"Second: Sol Finkelstein is the Secretary-Treasurer of the corporation and is likewise one of the officers who directed and managed the corporation and he also rendered service as a clerk when necessary in any of the stores owned by the bankrupt."

"Third: Harry Stern has received a regular salary from Goldman Stores, Incorporated, for representing them in the City of New York and buying merchandise to supply several stores. Goldman Stores, Inc., was only one of many who employed him in this capacity."

The questions asked by the referee are as follows:

"Are the officers and directors of Goldman Stores, Inc., under the above statement of facts wage earners within the provisions of the Bankruptcy Act?"

"And, second: Is Harry Stern under the statement of fact set forth a wage earner within the provisions of said Act?"

The record shows that the bankrupt had five stores, as follows: One at Monroe, La.; one at Bunkie, La.; one at Smackover, Ark.; one at Kilgore, Tex.; and one at Gladewater, Tex.

The salaries of Goldman and Finkelstein, who are president and secretary-treasurer, respectively, were $375 per month. The stock at Monroe, the domicile of the company, brought $2,600 at bankrupt sale; at Bunkie, approximately $2,900; at Smackover, $3,100; and at Kilgore and Gladewater, $5,300—the total being approximately $14,000. The inventory made by the trustee approximated $40,000, including the five stores. It is apparent that no single one of these stores could possibly have justified any such salaries, especially since it appears that there were a very large number of clerks and employees who have appeared and filed claims for their services as priorities, and over whom these officers evidently had supervision. There has been no attempt to separate the amounts claimed for clerks' hire and as officials. The claimants could scarcely have performed the duties of clerks in all the stores, and they are not entitled to any such salaries for clerk's hire alone. My conclusion is that they were paid these sums because of their official capacity and the fact that they were the principal owners of the business through its corporate stock. It has come to the attention of this court that these gentlemen have made some arrangement by which most of these stocks were bought in through their relatives or other connections, that is, the most desirable part of it, and the same now belongs to and is being operated by them or others closely identified with them. The circumstances are such that I do not think the claims of Goldman and Finkelstein can be allowed as privileged or carrying any lien upon the estate. Blessing v. Blanchard et al. (In re Pacific Motor Car Company's Estate) (C. C. A.) 223 F. 35, Ann. Cas. 1916B, 341.

As to the claim of Stern, the Bankruptcy Act § 64b (5), 11 USCA § 104 (b) (5), ranks as having priority "wages due to workmen, clerks, traveling or city salesmen, or servants. * * *" Congress found it necessary to amend the law in 1903 in order to permit "traveling or city salesmen" to claim such priority for the reason that the decisions of the courts had excluded them. Stern was a buyer, living in New York, and who was employed, not alone by the bankrupt, but by other merchants, and the sum paid him by Goldman was only a part of the income which he received for these services. I can see no difference between one who might be a traveling salesman, taking orders for the sale of merchandise in the store of

938

a bankrupt, and another who performs a similar service in buying in New York markets goods to be placed in such store. If the former were not entitled to the benefits of the statute without amendment, it would seem logical to follow that the latter could not be included in that class, except by express provision. Then, too, the ordinary meaning or definition of the words "workmen," "clerks," and "servants" does not include a New York buyer. . All statutes giving privileges or priorities must be strictly construed. Applying that rule to this law, I think by "workmen" would be meant window dressers, models, tailors, etc., in a business like the present; while "clerks," of course, are those who sell the goods, wait on customers, keep the books, stenographers, etc.; and "servants" would include delivery boys, janitors, draymen, etc. —all directly and immediately connected with the employer's establishment or business. It would be just as reasonable to say that a commission house who bought goods for a merchant would be entitled to a lien as to apply it to a buyer of the kind involved here. The only difference would be that the former would receive a percentage or commission, while the latter would be paid a salary. See numerous authorities cited in Re Quackenbush (D. C.) 259 F. 599.

My conclusion is that none of these claimants can be allowed priority.