## In re FLOYD SHOE CO., Inc.
### No. 22743.

District Court, E. D. New York.
June 3, 1933.

Herman G. Robbins, of Brooklyn, N. Y., for trustee.

Bernard F. Nathan, of New York City, for claimants.

BYERS, District Judge.

The trustee seeks to review three orders of the Referee, dated March 16, 1933, allowing the claims of Schneider, Sokol, and Heiss, in the sums of $100.00 each as priority claims.

The testimony of Sokol alone was taken before the referee, and was stipulated to be typical of all three claims. It is meager, but discloses the following:

Prior to 1930, these three men were employed by one Kimler, who operated a shoe factory. In November of that year, he induced them to invest $4,000.00, $3,500.00, and $4,000.00, respectively, with him, and apparently the bankrupt corporation was organized, each of these men understanding that he was to receive one-quarter of the capital

stock. In fact, none was issued to any of them.

There never was any meeting, but Kimler made known that Heiss was treasurer, Schneider secretary, and Sokol vice-president.

During the entire operations of the company, Heiss and Schneider were "lasters" and Sokol was foreman and "fitter."

The wages of all three were paid at the rate of $60.00 per week until September, 1931; from then until February, 1932, these wages were apparently diverted to the creditors, by what process is not clear. A creditors' meeting was had, and Kimler seems to have made a settlement which involved the application of these men's salaries to the creditors by the endorsement of salary checks.

Then in February, 1932, and for the succeeding four months, these claimants were paid $50.00 a week, salary or wages, stipulated to be the prevailing rate for lasters and fitters in shoe factories. In June, 1932, these payments stopped, and pay checks were again endorsed, and Kimler got the money. He promised Sokol to pay him "next week" but failed to do so.

The petition was filed in July of 1932, and each claim is for two weeks' salary prior thereto.

 The claimants never participated in any corporate action, such as an election, meeting, or adoption of resolutions. At least, the trustee never undertook to prove any, and the corporate records are presumably in his custody.

These men apparently were not shrewd enough to lend their money to Kimler, and take his notes, but were willing to cast their lot with him as his associates in a corporate enterprise.

The distinctions between this and In re Progressive Luggage Corp. (C. C. A.) 34 F. (2d) 138, seem to be the following:

(a) The relation between these claimants and the corporation was essentially that of employer and employee.

(b) These claimants never voted themselves salaries in any capacity, nor did they vote on any other subject.

(c) Their compensation was not essentially a drawing account, but wages earned for performing manual labor and nothing else.

(d) These men were not vice-principals. Kimler was the directing head of the enterprise, and his extension agreement with creditors in September of 1931 was predicated, in part at least, upon the giving of his own personal notes, and not those of the corporation.

(e) While these men for present purposes must be taken to have owned three-quarters of the stock of the corporation, although it was never issued to them, there is no evidence that their weekly stipends bore any relation to Kimler's; i. e., there was no such equality of drawings as characterized the Progressive Luggage Case.

Finally, unless men who manually labor in the business of a corporation must be precluded from priority wage claims by reason of having paid for stock in the employing company, the conclusion of the Referee would seem to be correct.

The opposing considerations are:

(a) Heiss signed checks as treasurer.

He did not receive any salary as treasurer, and the evidence would justify the inference that this was a kind of sop thrown to these three men who furnished so much of the capital that Kimler employed. It does not in itself take Heiss out of the class of "workmen."

(b) These men contributed, under some kind of arrangement, about five months' salary to the corporate creditors.

During all that time, they continued to work as lasters and fitters, and probably thought to save the business by that expedient. The trustee had the opportunity to develop this situation, either by examining Kimler or some one else familiar with the facts. He did neither. That contribution to creditors did not change the claimants from workmen into principals.

Viewing the case as a whole, the facts are thought to resemble those in the Matter of Swain Co. (D. C.) 194 F. 749, rather than those in the Progressive Luggage Case.

Application to review denied. Settle orders.