## In re PACIFIC OIL & MEAL CO.
### No. 32077.

District Court, S. D. California, Central Division.

Oct. 10, 1938.

Newby & Newby, of Los Angeles, Cal., for debtor.

McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., Harold Black, of Los Angeles, Cal., and George Harnagel, Jr., of San Francisco, Cal., for Balfour, Guthrie & Co., Ltd., El Dorado Oil Works, R. J. Roesling & Co., Atkins-Kroll & Co.

Geo. G. Shapitric and Joseph I. King, both of Los Angeles, Cal., for Francisco Aguiar & Co.

J. B. Lamb, of Long Beach, for City of Long Beach.

JENNEY, District Judge.

This is a proceeding, pending since May 27, 1938, for the reorganization of debtor corporation, under the former Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Lowell J. Hart filed a claim for services as Secretary and Treasurer of debtor corporation in the amount of $1,556.81. Priority of payment of this claim, to the extent of $600, was asserted under Section 64b (5) of the Bankruptcy Act of 1898, 11 U.S.C.A. § 104(b) (5), on the ground that the same was earned by claimant, as a "clerk", within three months prior to the commencement of the proceedings. One of the creditors filed written objection to the allowance of priority of payment as to any portion of the claim. The objector concedes that the claim is entitled to allowance in full as a general claim against the estate.

Section 6(b) of the Chandler Bankruptcy Act, 11 U.S.C.A. § 1 note, provides that the provisions of that amendatory act shall govern bankruptcy proceedings, as far as practicable, in cases pending upon its effective date. That act took effect on September 22, 1938. The amendment of Section 64b (5) by the Chandler Bankruptcy Act (Section 64(a) (2), 11 U.S.C.

A. § 104(a) (2) does not change the substance of the law insofar as the status of this claim is concerned. The claim and objections thereto having been referred to a special master, a report was filed recommending allowance as a general claim, but recommending that any priorities be denied. The pertinent facts were stipulated to by the parties, and are briefly as follows:

Lowell J. Hart has been the Treasurer of debtor since June 1936, and its Secretary since February 8, 1938; having held both of these offices during the entire period for which priority is claimed. During such period he was also a director of the corporation, owning and holding thirty-three shares of debtor's preferred stock and forty-six shares of its common stock, out of a total of three thousand preferred shares and six thousand common shares outstanding.

The duties of the Treasurer, as defined in debtor's by-laws, are properly to account for all receipts and disbursements of the corporation. In this capacity Hart made bank deposits, attended to the drawing of checks, audited the pay roll and checked all disbursements. In oral testimony before the Special Master, Hart stated "just as a wild guess", that the time spent in this work averaged about ten minutes a day. In addition, he audited debtor's vouchers to ascertain the correctness of charges for materials received, prior to their actual entry by the bookkeeper in the account books of the corporation.

Hart carried out all arrangements with warehousemen for warehousing and releasing both raw materials and finished products. He made all arrangements for obtaining and routing tank cars used in shipment of debtor's products and supplies. He made collections on account of tank car shipments and obtained adequate and proper insurance coverage therefor. He also procured insurance on debtor's inventory, buildings and their contents, and, whenever necessary, negotiated insurance adjustments. He checked all deliveries against debtor's warehouse receipts and ascertained that proper accounting was made for all materials warehoused. In doing these things he had possession and control of valuable warehouse receipts and other corporate property.

Pursuant to general instructions from the Board of Directors, Hart looked after details connected with the loaning of vegetable oils to Balfour-Guthrie Company,

Ltd., checking their return in kind or accepting deliveries of other vegetable oils at declared valuations in lieu thereof. He was charged with the entire responsibility for debtor's accounting system, which he had himself installed at the beginning of debtor's operations; and in that connection he had immediate supervision of the work of debtor's bookkeeper. While banking arrangements were made in the first instances by his superior officers, Hart attended to the borrowing of money on warehouse receipts and conducted the ordinary banking transactions. All of the services above noted were ordinarily performed by Hart personally and not by anyone acting under him or pursuant to his directions. Although he was not required to keep regular office hours, he actually spent about six hours each week-day and three hours on Saturdays, in the performance of his duties. He worked at all times directly under and subject to orders of the company's President.

Hart's salary for the foregoing services was at an agreed rate of $400 per month until May 27, 1938, when a reduction was made to $325 per month, under orders of the Board of Directors. No written contract defining the services to be rendered by Hart and the compensation to be paid therefor, or for any part thereof, was ever entered into; nor was any attempt made to segregate any portion of his monthly salary or to show that any portion of his compensation was in payment for a particular service or for particular services.

It is the contention of claimant that he is a clerk within the meaning of Section 64b (5) of the Bankruptcy Act (Section 64(a) (2) of the Chandler Bankruptcy Act); that his title of Secretary and Treasurer was only a nominal one and that his services were really those of a clerk and not those of a corporate officer; therefore he is entitled to priority to the extent provided in the Act.

Because the facts at bar present a borderline question, and because there seems to be some uncertainty on the part of Referees in Bankruptcy in this district and attorneys interested in bankruptcy matters, the court, in its determination, will consider and analyze substantially all of the cases on this point.

The terms "workmen, servants, clerks, or traveling or city salesmen" as used in the statute, should be given their common meaning. Priority of payment un-

der the Act was intended for the benefit only of those who are dependent upon their wages for a living, and who, having lost their employment by the bankruptcy, would be in need of such protection. Blessing v. Blanchard, 9 Cir., 223 F. 35, Ann.Cas. 1916B, 341, 35 A.B.R. 135; Keyes v. Davie, 9 Cir., 231 F. 688, 36 A.B.R. 884; In re Estey, D.C.N.Y., 6 F.Supp. 570; In re Broudarge Bros. Novelty Yarn, Inc., D.C. N.Y., 22 F.Supp. 891. Thus, while even the higher-salaried officer of a corporation may be it's servant or clerk, he is not entitled to priority in bankruptcy distribution, because that type of worker is not intended to be protected under the Act. Wright v. Chase National Bank, 4 Cir., 92 F.2d 271; Blessing v. Blanchard, supra. Congress certainly never intended that wage claims of officers of a corporation—even minor officers—who are in any way responsible for management or who assist in policy forming should be given priority over the claims of general creditors. While Congress doubtless did not intend to penalize such officers, who might not be responsible for the financial condition of the corporation, still it did not intend to reward them, by granting them priority. Irving Trust Co. v. Roth, D.C.N.Y., 48 F.2d 345; In re Weinrod & Kaempfer, Inc., N.Y., 2 A.B.R.,N.S., 105.

■ It is generally held that the managing or executive officers of a corporation are not entitled to priority, especially where such officers are also directors and stockholders. Wintermote v. MacLafferty, 9 Cir., 233 F. 95, 37 A.B.R. 425; In re Bradley, N.Y., 3 A.B.R.,N.S., 505; In re Snow Wire Works, N.Y., 34 A.B.R. 152; In re American Finance & Securities Co., N.J., 38 A.B.R. 479; In re Progressive Luggage Corp., 2 Cir., 34 F.2d 138, 14 A. B.R.,N.S., 252; In re Hirth-Kovarik Co., D.C.Pa., 15 A.B.R.,N.S., 200; In re Grubbs-Wiley Grocery Co., D.C.Mo., 96 F. 183, 2 A.B.R. 442; In re Dalton Electric Co., D. C. Miss., 7 F.Supp. 465, 25 A.B.R.,N.S., 350; In re Eagle Ice & Coal Co., D.C., 241 F. 393; In re Weinrod & Kaempfer, Inc., supra. Cf. Carpenter v. Policy Holders Life Insurance Association, 9 Cal.2d 167, at page 170, 70 P.2d 487, 111 A.L.R. 1450. Likewise, one acting in an official capacity, with supervisory responsibility, should not be given priority. In re Bush Terminal Printing Corporation, D.C.N.Y., 32 F.2d 265; In re Broudarge Bros. Novelty Yarn, Inc., supra; In re Peerless Cabinet Corporation, D.C., 15 F.Supp. 462. But, as stated by the Circuit Court of Appeals for the Ninth Circuit, in Re Pacific Co-operative League Stores, 291 F. 759, 761, 4 A.B.R.,N.S., 122, "In all cases it is the nature of the actual work done by the employee, and not the mere title of the position held by him, which determines his right to a preference." In re Progressive Luggage Corp., 2 Cir., 34 F.2d 138; In re Broudarge Bros. Novelty Yarn, Inc., supra; In re Bush Terminal Printing Corporation, supra. Of course, were claimant merely a nominal officer or director of the bankrupt corporation, such official position would not in itself preclude him from establishing a prior right if, as an actual matter of fact, he had been employed and earned wages as a clerk, In re Swain Co., D.C.Cal., 194 F. 749, 28 A.B.R. 66; In re Capital Paint Co., D.C.Cal., 239 F. 424, 38 A.B.R. 188; In re Broudarge Bros. Novelty Yarn, Inc., supra; In re Bush Terminal Printing Corp., supra; nor would merely being a stockholder or director be enough to bar his claim. Brady v. McCann, 6 Cir., 8 F.2d 928; In re Floyd Shoe Co., D.C.N.Y., 3 F.Supp. 568. On the other hand, merely incidental work as a clerk will not be enough of itself to give him priority. In re Birmingham & Sons Co., D.C.Tenn., 1 F.2d 511; In re Greenberger, D.C.N.Y., 203 F. 583.

■ It is not always easy to determine whether the services as performed by claimant are rendered as an officer or as a mere workman, clerk, servant, or salesman. The line of demarcation indicated in the decisions is somewhat indistinct and each case seems to have been decided in the light of the principal facts before the court. In re Pacific Co-operative League Stores, 9 Cir., supra. However, one of the most important elements to be considered in arriving at a conclusion is the contract of employment (In re Bonk, D.C., 270 F. 657; In re Arlington Hardware Co., S. D.Cal., 36 A.B.R.,N.S., 155) and whether it establishes the relationship of employer and employee. In re Floyd Shoe Co., supra. If a claimant has been hired to perform services usually associated with an officer, or has been expressly hired as an officer, he is not entitled to priority under the Act merely because a large part of the service actually rendered might well have been performed by a clerk. In re Progressive Luggage Corp., 2 Cir., supra; In re Birmingham & Sons Co.,

supra; In re Greenberger, supra; In re Crown Point Brush Co., D.C.N.Y., 200 F. 882, 29 A.B.R. 638.

In the instant case Hart appears to have been employed as Secretary and Treasurer and not as a clerk. He was one of the active officers of debtor and was a director and stockholder. Even though some of Hart's services could just as well have been performed by a clerk, nevertheless he was not hired to perform them as such, but as Secretary and Treasurer. No attempt has been made to segregate those services which he performed as Secretary and Treasurer from those which he rendered only as a clerk. In re Peerless Cabinet Corp., supra; In re Goldman Stores, Inc., D.C.La., 3 F.Supp. 936; In re Birmingham & Sons Co., supra; In re Boston French Range Co., D.C.Mass., 235 F. 916. The bulk of his duties were those of an officer. The evidence shows clearly that the contract of employment provided for a single indivisible compensation. Under such circumstances wages due for his services would not be entitled to priority of payment. In re Ye Ladies Shoppe, Inc., D.C.Del., 283 F. 693, 49 A.B.R. 268; In re Eagle Ice & Coal Co., D.C.Pa., 241 F. 393, 39 A.B.R. 184; In re American Finance & Securities Co., N.J., 38 A.B.R. 479; In re Arlington Hardware Co., Cal., supra. Cf. cases collected in: Ann.Cas.1916B, p. 345; 54 A.L.R. 587, 111 A.L.R. 1457.

It is a matter of common knowledge among those who have followed the discussions at the more recent National Bankruptcy Conference, where the framework of the new Chandler Bankruptcy Act was originally constructed, that the growing tendency to enlarge priorities was deplored. As a result, priorities arising out of state laws were much restricted under Section 64(a) (5) of the Chandler Act, 11 U.S.C.A. § 104(a) (5). It is the opinion of this court that any right to priority should be clearly authorized by the Act and established by the evidence. We are in accord with the learned judge who said, in the case of In re Standard Composition Co., D.C.Mich., 23 F.Supp. 391, 395:

"The Bankruptcy Act, 11 U.S.C.A. § 1 et seq., was drafted with the principle that 'equality is equity' in mind, but there has been a tendency in recent years for the typical bankruptcy proceeding to resolve itself into a process in which one preferred party after another slices off a portion of the available assets, with little or none remaining for distribution to general creditors. This process ought not to be extended beyond the clear requirements of the controlling statutes."

It is therefore the opinion of the court that the Hart claim must be allowed as a general claim only, and that the priority asserted must be disallowed. The report of the Special Master is confirmed.