## Hall's Estate. Lachman's Appeal.

[Marked to be reported.]

*Assigned estates—Wages claims—Acts of April* 9, 1872; *June* 13, 1883; *June* 3, 1887.

The act of April 9, 1872, P. L. 47, and the supplementary acts of June 13, 1883, P. L. 116, and June 3, 1887, P. L. 237, which give preference to wages claims against an estate assigned for the benefit of creditors or taken in execution by the sheriff, require that the claim filed, in order to secure priority of lien for the amount of the wages against real estate covered by the assignment, must set forth and show (1) the amount of wages due and preferred; (2) the character of the services for which the claim is filed, and that the same were rendered in or about a business carried on by the party against whom the claim is filed, and such as is defined by law; (3) that the labor was done by the claimant within six months preceding the date of the sheriff's levy, or the date of the assignment; (4) the process in the hands of the sheriff, or the deed of assignment, must be sufficiently set out and described to identify the same; and (5) the claimant must set forth that his claim is a lien on the specific property levied upon or assigned.

Where claims of this character were defective in the last particular, although allowed to share pro rata in the distribution of the proceeds of personal property assigned, they were not allowed to come in ahead of judgment liens against real estate covered by the assignment.

*Wages claims—Act of April* 22, 1854—*Act of April* 9, 1872, *sec.* 3.

The act of April 9, 1872, sec. 3, P. L. 47, supplies the act of April 22, 1854, P. L. 480, only as to such persons as are engaged in the operations mentioned in the first section of the later act. As to all parties not within the classes enumerated therein, the act of 1854 is still applicable, and they are entitled to receive, out of the proceeds of personal estate assigned, their claims for wages to the amount of $100 each.

Argued Feb. 8, 1892. Appeal, No. 312, Jan. T., 1891, from decree of C. P. Chester Co., dismissing exceptions to auditor's report distributing assigned estate of Ellis Hall. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Claims for wages presented before the auditor.

The facts shown before the auditor, R. E. Monaghan, Esq., were as follows : The assignor was a carpenter and contractor. He made an assignment of all his property in trust for the benefit of creditors.  At the time of the assignment he was possessed of three tracts of land which were subsequently sold under an order of court, and an auditor appointed to make distribution.   The real estate fund amounted to $2,008.26 and the personal fund to $154.41.   Claimants were parties who had performed labor for the assignor upon properties which he was erecting for third parties, and their claims were filed to secure liens upon his real estate.

The auditor reported in part as follows:

" The several counsel representing the claims for wages urge that these wages claims are to be preferred in this distribution. They further contend that their claims have been put in proper shape and filed, so as to give them this legal preference under our statutes regulating the filing of such liens for wages. These liens were filed in the prothonotary's office of this county, as before set forth, and they were filed in order to become liens on the real estate of the assignor.   On the other hand, the counsel for the judgment lien-creditors contend that owing to a defect in the wages claims filed, the judgments must be first paid in their order out of the real estate fund, so far as it will pay the same.   They also claim a pro rata dividend out of the personal property fund.   They further contend that the assignor, being a contractor and builder, and the wages earned by the respective claimants being for labor bestowed upon houses owned by other people, and which houses were erected by the assignor under contracts, therefore, the liens for such wages could not be entered so as to bind the assignor's own estate ; that he was not such a party as was embraced within the provisions of the laws relating to liens for wages and their preferences.

. " It was in evidence that the assignor was a contractor and builder, and that he neither owned the houses nor the lands on which the houses were erected, and upon which the work and labor had been bestowed by the several claimants.   The counsel for the judgments further contended that the claims as filed were defective; because they did not ' set forth that

the property described in said claims, and against which the liens were filed, was the same real estate which had passed by the assignor into the possession of his assignee, for the benefit of his creditors; that the record of the lien did not show the real estate to be the same which had been assigned to his assignee; and that the several liens are fatally defective by reason of this omission.

"This is an important point in the case, and requires and demands careful consideration. If it should prove a fatal omission it may do great injury to those meritorious wage-earners to whom it was the design and intention of the law-makers to give a preference.

"When property is assigned for the benefit of creditors, it is placed by the assignor in the hands of his assignee under the law governing assignments, and, therefore, it is under the control of the court. The property is in the grasp of the law, for the benefit of creditors. And the estate in the hands of an assignee, therefore, is very similar to property in the hands of the sheriff under and by virtue of his levy; and everything required to be done by the wage claimant in the case of the sheriff's levy in order to secure the benefit of the law must be pursued in cases of assignment for the benefit of creditors; that is to say, the claim in both cases must set forth and show, (1) the amount of wages due and preferred. (2) It should set forth the character of the services for which the claim is filed, and must state that the same were rendered in or about a business carried on by the party against whom the claim is filed, and is such as is defined by law. (3) That the labor was done by the claimant within six months preceding the date of the sheriff's levy, or the date of the assignment. (4) That the process in the hands of the sheriff, or the deed of assignment, must be sufficiently set out, and described, as to identify the same, and (5) the claimant must set forth that his claim is a lien on the specific property levied upon or assigned.

"It is very true that these special lien laws and wages acts should be strictly complied with. They convey special favors and should be closely adhered to in all respects. The notice of the claims, either by filing a lien, or a notice in writing to the sheriff, under the acts of assembly relating to these laborers' claims, is intended to serve the same purpose, that is, to inform

parties interested of the liens. The one must be as full and particular as the other, as to all the qualities and rights of the claim, and each must exhibit every fact to sustain the claim or the lien. The claimant who seeks the preference must comply with all the conditions on which it is allowed. And the notice in the one case and the lien in the other cannot be explained, enlarged, or helped out by verbal explanation or additions : Crater v. Deemer, 4 County Ct. Rep. 375. Uncertainty in both cases must be avoided. As to the proper notice to be given by the sheriff, our Supreme Court has passed upon that in a number of instances. In Pardee's Ap., 100 Pa. 408, the court held that the notice should set forth such facts as to bring the claim within the act, so that the officer and others interested may know that the labor was performed within the time limited by the act, and in a business defined therein, the sum due, and that the property subject to the lien is embraced in the levy. In this case the court repeated what it had said on several occasions — ' that it is immaterial in what form these things are set out, but it is essential that they appear : ' McMillen v. First National Bank of Corry, 1 W. N. C. 55 ; Allison v. Johnson, 92 Pa. 314 ; Adamson's Ap., 110 Pa. 462.

" The notice is required to be in writing, and in cases of sheriff's sale must be given to the officer before the actual sale on judicial process. Sales by a sheriff are judicial sales, and so too are sales made by an assignee under the act of February 17, 1876, judicial sales : Carver's Appeal, 89 Pa. 276. The real object of the notice is to inform others of the existence of the lien, that they may know how to protect themselves. It is not sufficient to put them on inquiry only. Graham v. Machine Co., 1 Chester Co. Rep., 76.

" While our legislature has steadily and most liberally provided the laws of preference and liens for labor of various kinds, our courts have required them to be strictly complied with. In Adamson's Appeal (supra), Mr. Justice STERRETT in commenting on the wages act of April 9, 1872, said : ' The law under which appellees claim is a species of class legislation, and it is not unreasonable to require that all the facts necessary to bring their respective claims within the provisions of the act should be stated in the notice they are required to serve on the sheriff. This is not only reasonable, but essentially neces-

sary, in order that the officer, as well as the execution creditors and others interested, may act understandingly.' Such special class legislation as our mechanics' lien laws and laws giving these preferences for work and labor, etc., are in derogation of the common law, and in some respects against the common right, and the auditor is of the opinion that it is but fair and proper that their provisions should be strictly complied with.

"WOODWARD, C. J., in delivering the opinion of the court in Esterley's Ap., 54 Pa. 194, commenting on the act of 1858, giving mechanics a lien upon improvements, etc., said: ' This incongruous departure from the principle of the lien law should receive a strict construction and not be carried a step beyond its very words. . . . The judicial mind ought to incline to a strict limitation of the terms of the statute, upon the principle that statutes in derogation of the common law and contrary to the general policy of the public, are always to be strictly construed.'

" So strictly do the courts require these lien laws to be complied with, that it is a common opinion that a large percentage of liens filed under the various acts could not be pressed to judgment and recovered in our courts if rigidly contested.

" The auditor has gone over these claims for wages filed, and has carefully examined them, and he finds they all are defective in a particular and essential requisite, to wit: The claims do not state that the property described therein, and against which the liens are claimed to have been filed, was the same property which had passed to the assignee, and was in his hands for the benefit of creditors of the assignor.

" The deed of assignment was executed and delivered before any of the claims were filed. It was on the public records of the court a considerable time before any of them were filed or entered. In none of the claims is there any recital indicating how the property came into the hands of the assignee, or whether the particular real estate, mentioned in the claims, ever had been assigned to him by the assignor.

" All these claims are found to be defective in this essential and material point. In none of them is it stated that the real estate described in them is the same which has been assigned by the assignor to his assignee. They refer to no deed of assignment, neither by date nor by reference to the record

of the same. In this particular all the claims fail to comply with the requirements of the law. Nowhere in these claims do they indicate that the real estate against which the wage-claimants filed their liens was in the grasp of the law, either by reason of death, insolvency or assignment. Until that is shown, by the claim filed, there can be no preference for wages under the acts. This must be shown by the lien itself, before any preference can be invoked under the law. It cannot be shown by verbal explanation. The lien filed and the record of it are the only evidence to sustain the same.

" Considering all the evidence before the auditor, and governed by the laws applicable to this contention, he is of opinion that all of the liens are fatally defective, and cannot be allowed a preference in this distribution of the funds.

" As to the first, second, third and fourth requisites, the liens are sufficient, but as to the fifth they are all fatally defective.

" The auditor, having disposed of these labor liens under his view of the law as above stated, deems it not really essential to consider the other positions taken against their allowance of a preference in the distribution of the fund in hand. But in order to have all questions which have been raised before the auditor presented to the court, he will consider and pass upon the second position taken against the allowance of the preference, to wit: That the assignor being a contractor and builder, and that the labor claims having been earned by labor bestowed upon houses owned by other persons, and which houses were erected by the assignor under contracts, therefore, the liens for such wages could not be entered so as to bind the assignor's real estate.

" This question has been the subject of much legal discussion, and has been surrounded by much uncertainty, but the auditor is of opinion that the courts have now reached a position of certainty, and have arrived at a conclusion in harmony with the spirit and letter of these labor claim laws. The first section of the act of April 9, 1872, provides as follows: ' That all moneys that may be due, or hereafter become due, for labor and services rendered by any miner, mechanic, laborer or clerk, from any person, or persons, or chartered company, employing clerks, miners, mechanics or laborers, either as owners, lessees, contractors or underowners, of any works, mines, manufac-

tories or other business, where clerks, miners, or mechanics are employed, whether at so much per diem, or otherwise, for any period, not exceeding six months immediately preceding the sale and transfer of such works, mines, manufactories or business, or other property connected therewith, in carrying on said business, by execution or otherwise, preceding the death, or insolvency of such employer, or employers, shall be a lien upon said mines, manufactory, business or other property, in, and about, or used in carrying on the said business, or in connection therewith, to the extent of the interest of said owners, or contractors, as the case may be, in said property, and shall be preferred and first paid out of the proceeds of the sale of said mine, manufactory, business or other property, as aforesaid.' The purpose of this section of the labor claims act of 1872 was to give the laborer a claim, under certain conditions, upon the purchase money, arising from the sale of mines, manufactories or other business, or property specified in that act, and it was against that mine, manufactory, etc., as the specific subject of sale, that the lien for labor was to attach.

" The third section of the act was intended to apply in certain cases and under different circumstances. This section reads as follows : ' In all cases of death, insolvency or assignment, of any person or persons, or chartered company, engaged in operations as hereinbefore mentioned, or of executions issued against them, the lien of preference mentioned, in the first section of this act, with the like limitations and powers, shall extend to every property of said persons or chartered company.'

" The first section has special reference to sales and transfer of mines, manufactories, etc., *before* death or insolvency, but the third section provides for the preference of labor claims, *after* death or insolvency, etc. By the third section the legislature intended to extend the lien of preference ' to every property of said persons or chartered company.' The persons or chartered company might own valuable estates in no way connected with the business, on which the labor has been done, still in the opinion of the auditor, the lien is extended to said property by the said third section of the act. The auditor is also of opinion that the assignor was such operator and contractor as comes within the statutes governing these preferences

of labor claims. This is clearly the ruling of our Supreme Court, as will appear in the case of Hartman's Appeal, 107 Pa. 327.

"Mr. Justice CLARK delivered a very carefully prepared opinion in that case and reached that conclusion.

"The auditor therefore is of opinion, that if the wage claims had been filed as specifically as the law required them to be, they would be entitled to a preference in this distribution; but as before determined, the auditor holds that these claims are not entitled to be preferred by reason of a fatal defect in the claims as filed."

The auditor accordingly distributed the personalty to the wages claimants pro rata with other claimants, but excluded them from the real estate fund.

Exceptions to the auditor's report were dismissed by the court. Samuel Lachman, and others, wages claimants, appealed.

*Errors assigned* were (1) not decreeing that the net personal estate be divided pro rata among the wages claimants; (2) awarding the proceeds of real estate to judgment creditors; (3-8) not awarding to Samuel Lachman and other appellants respectively the amount of their several claims out of the real estate fund.

*F. G. Hobson, E. L. Hallman* of *Hallman & Place* with him, for appellants.—The whole of the personal fund should have been distributed pro rata to the wages claimants. The act of. April 22, 1854, P. L. 480, has been only partially supplied by the act of April 6, 1872, P. L. 47; Gitt's Est., 35 Leg. Int. 404; Ramsey's Est., 1 Chest. Co. Rep. 449.

That these claimants are entitled to a preference under the act of June 13, 1883, P. L. 116, as amended by the act of June 3, 1887, P. L. 337, though the question has not been decided by this court, has been determined by decisions of the lower courts, holding that the restrictions placed upon the act of 1872 should not be held applicable to the act of 1883: Alderfer v. Beyer, 2 Co. Ct. R. 425; Periepi v. Frankenfield, 1 Montg. 24, 41 Leg. Int. 175; Weaver v. Wheaton, 2 Co. Ct. R. 428; Clymer Distilling Co., 2 Co. Ct. R. 111; Thompson v. Wingert, 14 W. N. C. 483; John's Est., 2 Chest. Co. Rep., 458; Top-

per v. Krise, 1 Co. Ct. R. 300; Buckwalter's Est., 3 Co. Ct. R. 315; Wiand v. Himmelwright, 8 Co. Ct. R. 663.

In an assigned estate no notice is requisite at all. All a claimant need do is to prove his claim before the auditor, and reasoning applicable to executions loses its force.

The act specifies that the lien shall be filed "in the same manner as mechanics' liens," and in the case of mechanics' liens it is not necessary to state that the property is in the hands of an assignee: Boas v. Birmingham, 2 Pears. 334.

*J. Frank E. Hause,* for appellee.—It is clear that under the act of 1872 no preference could be claimed for this labor: Gibbs and Sterrett's Ap., 100 Pa. 528; Pratt's Ap., 1 Cent. Rep. 218.

That the provisions of the act giving priority to wages claims must be strictly complied with, see Adamson's Ap., 110 Pa. 459; Allison v. Johnson, 92 Pa. 314. A defective claim cannot be helped out by the aid of oral testimony: Crater v. Deemer, 4 Co. Ct. R. 375.

If the claimants are entitled under the act of April 22, 1854, they cannot take from the real fund until the liens are paid: Wade's Ap., 29 Pa. 328.

Opinion by Mr. Chief Justice Paxson, March 28, 1892:

The learned auditor, and the court below, awarded the appellants a pro rata dividend out of the personal estate, but held that they were not entitled to come in upon the proceeds of the sale of the real estate. We think it very clear, under the act of April 9, 1872, P. L. 47, and the supplemental acts of June 13, 1883, P. L. 116, and June 3, 1887, P. L. 237, the appellants were not entitled to come in upon the proceeds of the real estate. We need not discuss this question, as the learned auditor has given sufficient reasons for his conclusion.

It was contended, however, that, under the act of April 22, 1854, P. L. 480, the appellants were entitled to be paid in full on their respective claims, not exceeding $100 each, out of the personal estate. The act of 1854 is as follows: "That in all assignments of property, whether real or personal, which shall hereafter be made by any person or persons, or chartered company, to trustees or assignees, on account of inability, at the time of the assignment, to pay his or their debts, the wages of miners, mechanics and laborers employed by such chartered

company or companies, shall be first preferred by such trustees
or assignees, before any other creditor or creditors of the as-
signor; provided. that any one claim thus preferred shall not
exceed $100."

The 3d section of the act of 1872 would seem to supply the
act of 1854, but a careful examination of it leads us to the con-
clusion that it supplies it only in part. It refers to such per-
sons as are engaged in such operations as are mentioned in the
1st section thereof. As it appears to be conceded that these
beneficiaries are not included in the act of 1872, we see no
reason why they may not claim under the act of 1854, to
the extent of $100 each, out of the proceeds of the personal
estate.

The decree is reversed at the costs of the appellees, and it
is ordered that distribution be made in accordance with this
opinion.