## Davis *v.* Nanty Glo Auto Company (et al., Appellant).

Argued April 20, 1936.

350

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ. 

*C. E. Davis,* for appellant.

*C. Randolph Myers,* for appellee.

OPINION BY CUNNINGHAM, J., September 30, 1936:

The controversy out of which this appeal arises had
its origin in a distribution by the sheriff of Cambria
County of a fund of $360 which came into his hands as
the proceeds of the sale of the personal property of
Nanty Glo Auto Company, a corporation conducting
a general garage business.

Notices by three wage claimants were duly given
under the provisions of the Act of April 9, 1872, P. L.
47, as amended and extended by the Acts of June 13,
1883, P. L. 116, June 3, 1887, P. L. 337, and May 12,
1891, P. L. 54, 43 PS §221, enacting, in substance, that
"all moneys that may be due ...... for *labor* and
*services* rendered by any miner or mechanic, etc., ......
for any period not exceeding six months preceding the
sale or transfer of the real or personal property [of
the employer] ...... by execution or otherwise, ......
shall be a lien upon said real or personal property,

...... and shall be preferred and first paid [but not exceeding $200] out of the proceeds of the sale ......"
(Italics supplied)

One of these claims was filed in the amount of $200 by Everett C. Davis, the president and general manager of the Nanty Glo Auto Company. The other claimants were James Moriarty, in the amount of $44.22, and Jack McCullough for $93.18. The allowance of any of these claims was resisted by the landlord of the defendant in the execution who had distrained prior to the issuing of the execution for rent in arrears. The sheriff, disregarding the contention of the landlord, made distribution to each of the three wage claimants in the respective amounts claimed, thereby practically exhausting the fund. The court below dismissed the exceptions of the landlord to the allowance of the claims of Moriarty and McCullough, but sustained them as to the claim of Everett C. Davis; hence the present appeal by him from the disallowance of his claim.

The only question now before us, under appellant's statement of the question involved, is whether, under all the evidence, he is within any of the classes of employes to whom the legislature intended to grant priority and protection with respect to the collection of the wages earned by them during the period, and not in excess of the amount, specified.

As remarked by this court in *McCracken v. Slemmer et al.,* 112 Pa. Superior Ct. 135, 137, 170 A. 453, "The general purpose of the legislation is 'the better protection of the wages' of such employed persons as are therein specified. ...... These acts secure to certain claimants rights which are denied other suitors; they confer special favors and, therefore, are to be strictly construed; he who claims the benefit of class legislation must bring himself within its provisions: *Hall's Estate,* 148 Pa. 121, 124, 23 A. 992; *Carey v. Lameroux,* 22 Pa. Superior Ct. 560."

In holding that a traveling salesman was not included in the act, Chief Justice FELL said in *Mulholland v. Wood, Brown & Co.*, 166 Pa. 486, 31 A. 248: "Each successive act enlarges the number of persons intended to be benefited. The first act included but four classes, the second twenty-three, and the third twenty-five ...... If it was the intention to extend to [traveling salesmen] the preference given by the act, it is to be presumed that they would have been included with the classes of persons named."

Admittedly, the executive officers of corporations are not specifically mentioned in the act, but it is contended by appellant that although he was an executive he also performed other duties in and about the garage and that his salary of $150 per month was paid him in consideration of the performance of these other duties.

The test in cases of this kind is not what services the claimant actually rendered during the preceding six months, but rather what he was employed to do. Obviously, wages or salary due the president and general manager of a business corporation are not entitled to any priority. It may be possible that one employed as a general manager at a fixed salary would have the right to accept inferior employment and render such "labor and services" as are contemplated by the statute, but merely because one holding an executive position voluntarily performs manual labor and services does not bring him within the class of servants entitled to enforce claims for their wages. His status must be determined by the nature and character of his employment.

Evidence with respect to the "labor and services" which appellant may have been performing or rendering is not necessarily conclusive. It may throw light upon the character of the relation which he bore to the auto company; but in order to be entitled to the priority claimed, appellant's evidence must establish

a real status of employer and employee, master and servant, between the company and himself. In other words, he must bring himself within the legislative intendment of the statute.

When the evidence in this case is read with these principles in mind, we think the court below was fully justified in rejecting appellant's claim.

He testified he was president of the company and had charge of its affairs. The secretary-treasurer testified appellant's compensation was paid to him as "manager." There was evidence that appellant hired and discharged the employees in the garage, had charge of the funds of the corporation, paid corporate obligations out of them, and conducted the negotiations for the leasing of the garage premises. We find no indication in the testimony that appellant had any superior in the management of the general business of the company. The fact that, as stated by him, he also "sold gas and repaired cars and sold, cleaned and greased cars and went out and towed them in" merely indicates that he incidentally performed some work of a type ordinarily done by the hired employees in a garage—such as the other claimants, Moriarty and McCullough. There were two or three other employees who worked in the garage; they all seem to have done similar work in repairing, washing and greasing cars, attending to the filling station, and some bookkeeping.

The principles and distinctions to which we have referred have been applied in, and may be illustrated by, the decisions of our appellate courts in cases arising under our Workmen's Compensation Act and by decisions of the federal courts under the Bankruptcy Act, §64 (4) ; 11 U. S. C. A. §104 (b).

That section of the latter act grants priority in the distribution of the bankrupt estate to "wages due to workmen, clerks, traveling or city salesmen, or servants. ......" The act has been interpreted to exclude executive officers of a corporation and the distinction

between executive and other duties has been recognized. See cases collected in 11 U. S. C. A. §104, Note 10. Cf. also *In re Crown Point Brush Co.,* 200 Fed. 882, (N. D. N. Y., 1912); *In re Eagle Ice & Coal Co.,* 241 Fed. 393, (E. D. Pa., 1917); *In re Progressive Luggage Corporation,* 34 Fed. (2d) 138, (C. C. A. 2d, 1929).

Under our Workmen's Compensation Act the term "employee" is synonymous with servant and "employer" with master.

In *Santi v. American Coal Exchange,* 91 Pa. Superior Ct. 271, a widow claimed compensation for the accidental death of her husband. The question was whether he had been an employee of the defendant company. At the time of his death he was its president and general manager; its business was stripping and producing coal. The compensation paid the deceased was $150 per week for his services as general manager.

The following excerpt from the opinion of our then President Judge, PORTER, affirming the disallowance of compensation, is applicable here:

"The essential factor is the relationship of decedent to the corporation at the time of his death. The evidence clearly shows that he was a salaried officer, exercising complete control over the operations of the defendant company, hiring and discharging employees and directing the execution of the work in which the company was engaged. The rights of the parties are not to be determined by the mere name given to the officer by the by-laws, or the resolution of the board of directors, under which he is appointed. The test is the power which the officer exercises. ...... The deceased was not a servant of the company within the contemplation of the Workmen's Compensation Law; he was the master, exercising an absolute control over the work. ......" See also *Nirenstein v. Colang, Inc. et al.,* 111 Pa. Superior Ct. 72, 169 A. 404; *Carville v.*

*Bornot & Co.,* 288 Pa. 104, 135 A. 652. As illustrating the distinction, see *Eagleson v. Harry G. Preston Co.,* 265 Pa. 397, 109 A. 154; *Gray v. Gray Printing Co. et al.,* 87 Pa. Superior Ct. 302.

In our opinion, there was ample evidence to sustain the conclusion of the court below that this appellant had been employed and paid in the capacity of a general executive officer of the company. The legislation invoked by him was never intended to give such officers a priority; it was enacted for the protection of the classes of laborers, mechanics and other wage earners therein enumerated.

The decree of distribution entered January 16, 1935, is affirmed at the costs of appellant.