[Civ. A. No. 4157. Appellate Department, Superior Court, County of Los Angeles.—May 19, 1939.]

V. CLARK, Appellant, v. MARJORIE MICHAEL, INC. (a Corporation), Defendant; M. GALVAN, as Assignee, etc., Respondent.

B. Warren Vinetz for Appellant.

Charles J. Katz, Alfred Gitelson and Samuel W. Blum for Respondent.

SHAW, P. J.—The question for decision is, whether the plaintiff has a preferred claim under provisions of section 1204 of the Code of Civil Procedure, reading as follows.: "When any assignment, whether voluntary or involuntary, and whether formal or informal, is made for the benefit of creditors of the assignor, or results from any proceeding in insolvency or receivership commenced against him, or when any property is turned over to the creditors of a person, firm, association or corporation, or to a receiver or trustee for the benefit· of creditors, the wages and salaries of miners, mechanics, salesmen, servants, clerks, laborers, and other persons, for personal services rendered such assignor, person, firm, association or corporation, within ninety days prior to such assignment, or the taking over of such property, or to the commencement of the proceeding when a court action is involved, and not exceeding two hundred dollars each, constitute preferred claims, and must be paid by the trustee, assignee or receiver before the claim of any other creditor of the assignor, insolvent, or debtor whose property is so turned over, and must be paid as soon as the money with which to pay same becomes available." Provisions of the section not quoted impose certain conditions of payment, compliance with which is not questioned here, and they need not be considered.

The facts are not in dispute and are practically all stipulated. Defendant Galvan is assignee for the benefit of creditors of defendant Marjorie Michael, Inc., hereinafter

referred to as the corporation. The plaintiff's assignor, Nancy Vinci, was employed by the corporation, during the period specified in the statute, to perform skilled services as designer, presser, and sewing and forelady at a salary of $50 per week, and the sum of $150 sued for herein became due to her from the corporation for these services during the period above mentioned and is unpaid. As thus depicted, plaintiff's claim is undoubtedly within the statute and entitled to preferential payment from the defendant Galvan, an assignee for creditors. The fact that Vinci acted as forelady does not debar her from a preference. Services of a forelady are personal services, within the meaning of this statute, especially where she also works herself, as in this case. (See *Levitt* v. *Faber*, (1937) 20 Cal. App. (2d) (Supp.) 758 [64 Pac. (2d) 498].)

█ Defendant Galvan does not dispute the propositions just stated, but points to the additional facts that plaintiff's assignor, Vinci, was, at all times in question, the holder of a majority of the capital stock of the corporation, and also its president and manager, which, as he contends, materially alter the picture. However, Vinci and the other officers of the corporation were not being paid anything for their services as officers but were "drawing salary as workers". She so testified and her testimony was not in any way disputed or impeached. Even without this testimony, it plainly appears from the stipulation that the money she seeks to recover here was due her for her services as "worker" in the capacities above mentioned, and not for any official services. In other words, the services for which a preference is sought were not performed by Vinci, either in whole or in part, in her capacity as president or manager. It does not appear that her employment as worker was made by herself acting as president or manager, and under the general presumption of regularity we must assume that it was not. We do not think these facts defeat her preference. The statute does not so declare and we see no sufficient reason for reading such a provision into it by construction. In support of this conclusion we find several decisions from other states.

Construing and applying a similar statute of Washington, giving a preference to claims of "every person performing labor" for "moneys due him . . . for labor performed",

in the case of one who was president, director and managing officer of a corporation, the Supreme Court of Washington said: ''Before the claim of the director can be allowed against the assets of an insolvent corporation which is in the hands of a receiver, it must be established by a clear preponderance of the evidence: First, that the services were clearly outside of the ordinary duties as director; and, second, that they were performed under circumstances sufficient to show that it was well understood by the corporate officers as well as by himself that the services were to be paid for by the corporation.'' Concluding that both these facts were shown, the court held the officer was entitled to a preference for his claim for services outside his official duties. (*Brown* v. *Wilcox Lumber & Logging Co.*, (1922) 118 Wash. 336 [203 Pac. 949, 950].) This case was approved and followed in *Cavanaugh* v. *Art Hardware etc. Co.*, (1923) 124 Wash. 243 [214 Pac. 152, 155], where the court said that in the previous case ''we held that, where a director and manager of a corporation performs manual services for the corporation clearly outside of his duties as such officer, he has a valid, preferred claim for such services'', and applied the rule to a trustee, manager and general superintendent of the workshop who also worked on the lathes as an ordinary mechanic, allowing him a preference for his services as mechanic.

In *Ferrell-Michael etc. Co.* v. *McCormac*, (Tex. Civ. App. 1915) 184 S. W. 1081, 1086, a Texas statute, giving to clerks, bookkeepers and other classes of workers a first lien upon certain property of their employers for the pay due them, was in question as applied to one who was manager but also rendered clerical and bookkeeping services, and the court said: ''We think, therefore, that it should be held that in cases like this, where the contract of employment contemplates the performance of services to secure the payment of which the statute was evidently enacted, that the statute should be given effect, even though the clerk, servant or other person named in the statute was also required to perform services more properly perhaps relating to the functions of a superintendent or manager, who, it appears, is not included within the protected classes of the statute.''

In *Davis* v. *Nanty Glo Auto Co.*, (1936) 123 Pa. Super. Ct. 349 [187 Atl. 227], under a statute giving a preferred claim upon an execution sale to money due ''for labor and

services rendered by any miner or mechanic", the court, while holding that one who was president and general manager of a corporation was not entitled, under the circumstances, to a priority, said: "Obviously, wages or salary due the president and general manager of a business corporation are not entitled to any priority. It may be possible that one employed as a general manager at a fixed salary would have the right to accept inferior employment and render such 'labor and services' as are contemplated by the statute, but merely because one holding an executive position voluntarily performs manual labor and services does not bring him within the class of servants entitled to enforce claims for their wages. His status must be determined by the nature and character of his employment."

A like question has frequently arisen under the provision of the Bankruptcy Act that, in distributing the assets of a bankrupt, preference shall be given to claims for "wages due to workmen, clerks, traveling or city salesmen or servants". Construing this provision of the Bankruptcy Act, the court in *In re Crown Point Brush Co.*, (D. C., N. D., N. Y., 1912) 200 Fed. 882, 886, although denying a preference claimed by a president and general manager and by a treasurer and assistant general manager for their claims for services deemed by the court to be official, said: "It is, of course, true that, in the absence of a statute prohibiting a corporation to hire its president, or treasurer, or general manager, or assistant general manager, or a director, to do the work of a mechanic or common laborer, it may do so, and for such labor under such an employment he would be entitled to priority. In other words, these officers are not disqualified from hiring to the corporation to do any kind of work." In *In re H. O. Roberts Co.*, (D. C. Minn. 1912) 193 Fed. 294, the court, allowing a claim as preferred, said: "The fact that a claimant is a director or officer of a corporation does not disable the corporation from employing him as a clerk also. If the labor performed by him is so performed under his employment as clerk, and is not performed as a part of his duties as an officer, then he is entitled to priority for his wages as a clerk." In *In re Eagle Ice & Coal Co.*, (D. C., E. D., Penn., 1917) 241 Fed. 393, 394, the court, while disallowing the preference claimed, said: "Had the company desired, it could, notwithstanding the fact that he was its president, have employed him as a workman,

clerk, traveling or city salesman or servant, and in such case he would have been entitled to prove against the bankruptcy estate the amount of his salary as president as a general creditor and the amount of his wages as a preferred creditor. . . . But in this case the sole employment was as president." To the same effect are *In re Swain Co.*, (D. C., N. D., Cal., 1912) 194 Fed. 749; *In re Capital Paint Co.*, (D. C., N. D., Cal., 1916) 239 Fed. 424; *In re Pacific Co-op. League Stores*, (C. C. A. 9, 1923) 291 Fed. 759, 761. In *In re Pacific Co-op. League Stores, supra,* the court said: "If their princi-. pal services were those of a clerk or salesman, their claims are not affected by the fact that the claimants also incidentally and secondarily performed supervisory or even managerial powers. . . . In all cases it is the nature of the actual work done by the employee, and not the mere title of the position held by him, which determines his right to a preference." Concurring with the rules stated in this last quotation are *Brady* v. *McCann*, (C. C. A. 6, 1925) 8 Fed. (2d) 928; *In re Cost Cut Counterbore Co.*, (D. C., E. D., Mich., 1922) 283 Fed. 670, 672; *Blessing* v. *Blanchard,* (C. C. A. 9, 1915) 223 Fed. 35, [Ann. Cas. 1916B, 341]; *In re Roebuck Weather Strip etc. Co.*, (D. C., E. D., Mich., 1910) 180 Fed. 497.

Our statute is of the same character and is framed in pursuance of the same purpose as the provision of the Bankruptcy Act on which the decisions above cited were made. We see no reason for not applying the same rule to it. To our eyes it clearly bases the right of the claimant to a preference upon the nature of the work done by him for which the claim is made—in pursuance, of course, of an employment to do it—and does not provide that a preference otherwise proper shall be defeated by the holding by a claimant who is within the categories specified of some other position not related to the work done. Defendant would have us reject the claim by reason of such holding. If one who has a voice in directing the affairs of a corporation should not be permitted to work for it in some other capacity, or if, when he does so work, he should not be allowed a preference for such work under section 1204 of the Code of Civil Procedure, that is a matter of public policy for legislative rather than judicial consideration. We find no such policy now embodied in section 1204. But we may suggest, in passing, that application of the present section as we view it is not likely to impede or obstruct the

efforts of any considerable number of employees who are not officers or of any large number of general creditors to obtain payment of their claims. The corporations whose officers perform for them personal services which are within the terms of section 1204, will not be the large corporations with many workmen needing the protection of this section, but the small concerns, incorporated for the convenience of a few persons engaged in some small business who are as dependent on the proceeds of their own labor for support as are any other workers. Such corporations may have no employees but their own officers, and will usually have few others and not many general creditors. It may be for this reason that the legislature has not written into section 1204 any exception of such cases as we have here.

There are some cases construing the Bankruptcy Act or state statutes of similar character, in which language may be found opposed to our conclusion. (See notes, 54 A. L. R. 567 et seq. and 111 A. L. R. 1453 et seq.) On analysis of the cases suggesting such a contrary view, it will be found that in most of them the services for which preference was sought were official services, rendered by officers in their capacity as such, and remarks made by the several courts must be considered with such a state of facts in mind.

A similar question has arisen under the workmen's compensation acts. Those acts limit the right to receive compensation under them to employees. Some of them expressly deny that right to executive officers and the same effect has been given others by judicial decision. There appears to be a nearly unanimous agreement by the various courts, however, that while an executive officer may not receive compensation for injuries received by him in the course of the performance of his official duties, such an officer may also be employed and act as an ordinary employee and if while so employed and acting he receives a compensable injury he is not to be denied compensation therefor because he is also an officer. See notes in 15 A. L. R. 1288 et seq., and 81 A. L. R. 644 et seq., where many cases on this subject are cited and reviewed, from which it appears that there is little dissent from this legal proposition but much variation in the states of fact to which its application has been invoked. While it is true the question under the workmen's compensation acts is not identical with

that here presented, yet both statutes have as their purpose the protection of workmen. For this reason there is an analogy between the compensation cases and those arising under the preference statutes; and there is also a common factor in the question whether an officer of a corporation who is also its employee or workman in some subordinate capacity may enforce the rights of such an employee or workman, notwithstanding his status as an officer. A few illustrative cases only are here cited.

In *Skouitchi* v. *Chic Cloak & Suit Co.*, (1921) 230 N. Y. 296 [130 N. E. 299, 15 A. L. R. 1285], the court referred to a previous decision as holding "that the higher executive officers of a corporation are not, as such, its employees in the ordinary sense of the word", and further said, "It was fully recognized, however, that there was nothing to prevent a corporation, if it so desired, from hiring one of its officers to be and to perform the work of such an employee as was contemplated by the statute." Accordingly it was held that one holding ten per cent of the stock of a corporation, who was its president and treasurer but performed no substantial duties in these capacities, and was also employed as general manager, but did not in fact act as such, merely performing services in packing, shipping, selling and delivering goods for the corporation, was entitled to compensation for injuries received by him while performing these services.

In *Stevens* v. *Industrial Com.*, (1931) 346 Ill. 495 [179 N. E. 102, 81 A. L. R. 638], the court reviewed a number of other decisions, including that last above cited, declared that there was a distinction between the executive officers of a corporation and its employees and that the former could not recover compensation under the statute, but held that compensation could be recovered for the death of one who was owner of nearly half the stock of a corporation and, with another half owner, did all its mechanical work, and who was also its secretary and treasurer, where his death resulted from injuries received while he was on a mission for the corporation which was not, the court held, any part of his official duty.

In *In re Raynes*, (1907) 66 Ind. App. 321 [118 N. E. 387, 391], the court said, referring to executive officers of a corporation: "such an official might serve in a dual capacity; that is, as an officer and also as a workman. It is not un-

reasonable to conceive of a case where the discharge of the official duties would constitute but a small portion of the services rendered by him to the corporation. Such an officer might be hired in fact to perform manual labor in connection with other employees, and his time in the main be occupied in performing such service and regular wages be paid him accordingly. Such an official in his capacity as workman might measure up in all respects to the conception of an employee within the meaning of the act as we have hereinbefore developed it, and in such capacity we believe that he should be regarded as an employee within the meaning of the compensation acts.'' Accordingly the court held that one who was a stockholder, director and secretary-treasurer of a corporation, as well as its buyer, salesman and collector, might be an employee entitled to compensation but remanded the case for further consideration and a finding of fact on this point.

In *Southern Surety Co.* v. *Childers,* (1922) 87 Okl. 261 [209 Pac. 927, 25 A. L. R. 373], the court held that one who was majority stockholder, and president of a garage corporation, but spent a portion of his time in doing manual or mechanical labor for it, was while so engaged to be regarded as an employee entitled to workmen's compensation. The court said: "It appears to us that the better reason dictates that compensation should not be denied one because he happens to be a stockholder and president or other executive or managing officer of the corporation that employs him, and that that fact alone is not sufficient to eliminate him from those regarded as employees within the meaning of such act. Obviously, where the claimant was the chief executive officer of a large corporation, and his duties did not require that he perform manual or mechanical labor, he could not be regarded as the employee within the meaning of the act or the terms of the policy, and if he sustained injuries while performing manual or mechanical labor, which was no part of his duties, but in which he acted as a mere volunteer, he would not be entitled to compensation. On the other hand, although the claimant was the owner of the majority of the stock and was the chief executive officer of a corporation, yet if he performed manual or mechanical labor as a part of his duties, such an officer in his capacity as a workman might measure up in all respects to the conception of an employee within the meaning of the act. The

case at bar affords an apt illustration of a case where the official of a corporation served in a dual capacity; that is, as an officer and as a workman."

Defendant cites and principally relies on *Carpenter* v. *Policy Holders L. Ins. Assn.*, (1937) 9 Cal. (2d) 167 [70 Pac. (2d) 487, 111 A. L. R. 1450], and contends that it is determinative here. That case dealt with the same statute now before us, section 1204 of the Code of Civil Procedure, and it held that certain officers of the corporate assignor there, who were, respectively, its president, its vice-president, and its secretary-treasurer, were not entitled to preference under the section. But the salaries which they were claiming were for their services as such officers, and that appears to have been the ground of decision in the case. The court referred to "major officers of an insolvent concern who have claims for unpaid salary", and said, in part, "We are of the view that it was not within the purposes and objects of section 1204 of the Code of Civil Procedure, to give officials of a corporation, such as a president, vice-president and secretary-treasurer, a preferential claim for an unpaid balance of salaries due them when the corporation passes into liquidation. . . . None of the specific designations in the section . . . connote an official capacity. . . . It is our conclusion that under section 1204 of the Code of Civil Procedure, the respondent officers, who are president, vice-president, and secretary-treasurer of the corporation in liquidation, are not entitled to priority in payment of any portion of their claims for salary." We do not believe the court intended by anything it said in this case to hold that an officer who drew no pay for his services as such might not be allowed a preference for other services rendered by him in a capacity which did come within the "specific designations in the section". Certainly the facts before it called for no such holding. In each of the cases cited by the court in support of its decision the compensation for which the officer sought preference was due to him for official services, at least in part, and in some of them this fact was emphasized as a ground of decision. As a further indication that the court was not intending to decide the question now before us, we note that in support of its ruling the court cited cases in which contradictory views were expressed on our question, to wit, *In re Crown Point Brush Co., supra,* 200 Fed. 882, in which, as already stated, the court declared

that officers who were also laborers would be entitled to a preference for labor performed, and *England* v. *Beatty Organ Co.*, (1866) 41 N. J. Eq. 470 [4 Atl. 307], in which a contrary opinion was expressed. The dissenting opinion in the Carpenter case refers to the case as one involving "the salaries of those rendering services to corporations as officers thereof". The case merely holds, in effect, that the services of such officers as such are not to be regarded as "personal services" within the meaning of that term as used in section 1204.

The judgment is reversed with directions to enter judgment for the plaintiff as prayed for in her complaint, appellant to recover her costs of appeal from respondent Galvan.

Bishop, J., concurred.

SCHAUER, J., Dissenting.—I dissent. It is conceivable that cases may arise hereafter in which the legal aspects are entirely similar to those of the instant case but wherein the insolvent corporations do not possess assets enough to pay the preferred claims in full and wherein the officers and directors of such corporations shall file demands constituting the major portion of the claims for priority. If the foregoing ruling by the majority of this court is followed as a precedent in those cases it will operate substantially to impair for *bona fide* employees the benefits wisely intended to be secured for them by section 1204 of the Code of Civil Procedure. Said section 1204 is designed and intended to protect laborers and subordinate employees generally in the collection of wages due them for services rendered while employed in a business managed by another. Even to the extent of possibly defeating entirely the claims of general creditors, it has been considered necessary, or at least conducive to social welfare, to throw the protective cloak of this legislation about those occupying positions which are subordinate or completely voiceless, in the managerial scale, because it is to the public interest that such persons, who ordinarily have no means of ascertaining or keeping currently informed concerning the financial status of their employer, and who often are dependent for the very necessaries of life upon the receipt of their earnings from week to week, shall receive those earnings *without deduction or delay*, in preference to the claims of general creditors who

ordinarily have been under less necessity of dealing with the employer, have been better able to ascertain his financial status and are less dependent for livelihood on the collection of the particular debt due them. The debt to them would ordinarily be one of many outstanding, current accounts while to the employee it might be his only account and perhaps his entire capital. Such legislation, besides being beneficial to the immediate objects of the preference granted, obviously conduces to the general public welfare and should be upheld and protected from insidious abuses as well as from direct attacks; I think it was never intended that by it the managing heads of a corporation, who, by virtue of their offices, are in a position superior to that of general creditors as well as that of subordinate employees, should be given the power deliberately to run the corporation further into debts whereby they establish themselves as creditors with a preference over the less informed general creditors.

Said section 1204 provides that ''When any assignment . . . is made for the benefit of creditors . . . or results from any proceeding in insolvency or receivership . . . the wages and salaries of miners, mechanics, salesmen, servants, clerks, laborers, and other persons, for personal services rendered such assignor . . . or corporation, within ninety days prior to such assignment . . . or to the commencement of the proceeding . . . and not exceeding two hundred dollars each, constitute preferred claims, and must be paid by the trustee, assignee or receiver before the claim of any other creditor . . . and must be paid as soon as the money with which to pay same becomes available. If there is insufficient money with which to pay *all such labor claims* in full the money available must be distributed among the claimants in proportion to the amount of their respective claims. . . . This section is binding upon all the courts of this State . . . '' (Italics added.) The drafters of that statute by their use of the words ''all such labor claims'' inferentially suggest that they thought they were preparing legislation to protect employees rather than employers.

Plaintiff's assignor, Nancy Vinci, for approximately one year prior to the assignment for the benefit of creditors which was made by defendant corporation, was the president and manager of such defendant corporation and owned a majority of its outstanding stock. As such president and

manager, in the performance of the duties· of such offices, she would naturally have become acquainted with, and currently maintained knowledge of, the financial affairs of her corporation. She was the manager of such affairs on behalf of the corporation and its stockholders. As such manager she caused herself to be employed by the corporation in the performance of skilled labor for a salary or wage of $50 per week. This salary or wage was paid to the plaintiff's said assignor for approximately one year; the corporation then seemingly had become financially distressed; nevertheless said assignor, who must as president and manager of the corporation have had full knowledge of the facts, caused herself to remain in the corporation's employ and caused the corporation to continue hiring her for three weeks during which she and other employees were not paid. Such three weeks' operation of the business without paying salaries or wages was doubtless intended to be for the benefit of the corporation and the assignor as the principal stockholder thereof; now, however, such assignor has filed a claim seeking *as an employee* the preference created by the above-quoted section 1204 of the Code of Civil Procedure.

I think the legislature did not intend by the enactment of said section 1204 to give to any person the chameleon-like quality of wielding the power of management of the corporation *employer* to continue its business and herself as an employee thereof beyond a time when it met its obligations and then in the guise of an oppressed *employee* to claim the preferential benefits accorded by the statute to protect *bona fide* employees.

In the majority opinion an attempt is made to distinguish the case of *Carpenter* v. *Policy Holders Life Ins. Assn.*, (1937) 9 Cal. (2d) 167 [70 Pac. (2d) 487, 111 A. L. R. 1450], from the case at bar. The sole distinction pointed out is that in the case before us it is asserted, despite the justified inference and implied finding to the contrary, that the plaintiff's assignor and the other officers of the corporation were not being paid anything for their services as officers but were ''drawing salary as workers'' exclusively, while in the case last cited the claims were made by the corporation's president, vice-president, and secretary-treasurer, without the nature of the services performed by them, other than as possibly may be inferred from the titles of their offices, appearing. Such asserted distinction in plainer words

amounts to this: that if the president of a corporation performs services which are ordinarily rendered by a subordinate employee he is entitled to a preference for the salary due him for such work, but if the services he renders are those ordinarily pertaining to the office of president he has no preference. I do not think our statute can be reasonably so construed and our Supreme Court has not so construed it.

In the case mentioned (*Carpenter* v. *Policy Holders Life Ins. Assn.*, (1937) 9 Cal. (2d) 167, *supra*), at page 169, the Supreme Court, speaking through Mr. Justice Seawell, said: "We are of the view that it was not within the purposes and objects of section 1204 of the Code of Civil Procedure, to give officials of a corporation, such as a president . . . a preferential claim for an unpaid balance of salaries due them when the corporation passes into liquidation. While it is true that a literal wording of said section might seem to include such officials, we are of the view that they are in a class apart from others who work for the corporation for wages or salaries, and that in the absence of express mention it was not the legislative intent to include them within the class given priority." As previously pointed out by the court, on page 168, "the preference given is for the 'wages and salaries of miners, mechanics, salesmen, servants, clerks, laborers, and other persons, for personal services' ". The requirement made by the statute as the condition of its preference is *not of a type of service* but *in the character of the relationship to the employer*. The claimants in the case cited were employees and the services rendered by them were *personal services* and hence within the statute as to that exaction, but because the persons rendering those services bore a *managerial relationship* to the corporation employer they were held to be "in a class apart from others who work for the corporation for wages or salaries". It is they—the managerial staff, by reason of their offices—not their services by reason of the character thereof—that "are in a class apart from others who work for the corporation for wages or salaries". There can be no tenable contention here that plaintiff's assignor was not actually the president of the involved corporation and performing the duties of that office during the period for which application of the preference is sought.

My learned associates insist that "In each of the cases cited by the court [in the *Carpenter* case] in support of its

decision the compensation for which the officer sought preference was due him for official services, at least in part . . . '' One of the cases so cited is that of *England's Excrs.* v. *Beatty Organ etc. Co.*, (1866) 41 N. J. Eq. 470 [4 Atl. 307]. From that case the following quotation shows that the New Jersey court was considering and discussing, and apparently thought that it was concerned with, a question similar to ours. It said: ''Is the president of a corporation, when engaged in and about the business of his company, whatever its character may be, a laborer, within the contemplation of the act? Does the act fairly mean to embrace one or all of the members of the company, as well as all or any others who may be employed by it? Can the members of a corporation employ themselves, respectively, and, in case of failure, stand upon the statute for any compensation that may be due? The president of a corporation, under the act, is and must be a director. He is part and parcel of the organization. There must be employer as well as employed; and the question arises, does the act authorize the organization, which is the employer, to employ itself? Does the statute mean to go so far as to empower the directors of a corporation to employ themselves, as the workmen and laborers, to do all the work and labor necessary to be done, and then, in case of insolvency, to give them the statutory lien, and to prefer them to all the general creditors? I cannot so understand the act. I think, under our statute, every court would do nothing more than place every such creditor upon the same footing as the general creditor. I cannot perceive any reason for giving the slightest advantage to those under whose management such a concern is wrecked.'' Attention is also called to the following language from *In re Grubbs-Wiley Grocery Co.*, (D. C., W. D., Mo., 1899) 96 Fed. 183, 184 (likewise cited in the *Carpenter* case), construing the bankruptcy act: ''The board of directors, as is frequently the case, might have voted a salary to the president for his services. Could it be maintained that he was a workman or servant of the company on a salary, entitling him, on the declaration of bankruptcy of the concern, to have his salary paid as a preferred claim? Indeed, it would present a remarkable feature of the bankrupt act, if the managing officers of a business corporation could vote themselves salaries *ad libitum*, and after, by their mismanagement, wrecking the company, and inviting an adjudication of bankruptcy,

they could, to the exclusion of other creditors of the concern, whose money and property they had obtained on credit, come in as preferred creditors, to the exclusion of such general creditors. The act, in my judgment, admits of no such construction.'' This language was quoted and followed in *In re Carolina Cooperage Co.*, (D. C., E. D., N. C. 1899) 96 Fed. 950, 953, and the case was cited with apparent approval in *In re Boston French Range Co.*, (D. C., D. Mass. 1916) 235 Fed. 916.

One wishing to review the cases of several jurisdictions discussing questions somewhat akin to ours may find annotations in 54 American Law Reports at page 567 and in 111 Amercian Law Reports at page 1453. An exhaustive review and citation of the authorities is also revealed in the scholarly opinion of Judge Jenney rendered in *Proceeding in the Matter of Reorganization of Pacific Oil & Meal Co.*, (1938) D. C., S. D., Cal., 24 Fed. Supp. 767. I do not here discuss further the cases from other jurisdictions because in my opinion no useful purpose would be served thereby; none of those cases is precisely in point. If reason commends the rule I urge, it may some time be followed; if not, those cases will not help it. Judge Jenney's opinion, however, while dealing with federal acts (sec. 77B, Bankruptcy Act, 11 U. S. C. A., sec. 207 and Chandler Bankruptcy Act, 11 U. S. C. A.) discusses considerations in interpreting those acts which are equally applicable to our problem of construction. It may be said of our legislature and section 1204 of the Code of Civil Procedure, as Judge Jenney said of Congress and the bankruptcy acts, that it ''certainly never intended that wage claims of officers of a corporation—even minor officers—who are in any way responsible for management or who assist in policy forming should be given priority over the claims of general creditors''. (*In re Pacific Oil & Meal Co.*, (1938) 24 Fed. Supp. 767, 770, *supra.*) We may also, with profit, give consideration to this further quotation from Judge Jenney's opinion (p. 771) : ''It is a matter of common knowledge among those who have followed the discussions at the more recent National Bankruptcy Conference, where the framework of the new Chandler Bankruptcy Act was originally constructed, that the growing tendency to enlarge priorities was deplored. . . . It is the opinion of this court that any right of priority should be clearly authorized by the Act and established by the evidence.''

If the president and general manager of a corporation can do what the plaintiff's assignor here seeks to accomplish, so also could an entire board of directors. The *bona fide* employees of a relatively small corporation, who had no voice in its management and no special knowledge of its affairs, might, under such a rule, at the end of a period of employment without receipt of pay, find themselves with a technical preference, half or more empty of benefit because the substance that should have been all theirs was to be divided also among the managing heads, who by reason of their superior position in the structure of the corporation had been able by so continuing the operation of the business and their own employment therein, to secure for themselves such share of the corporation's assets; and the general creditors, who perhaps had become such while the corporation was solvent and before the debt to the managing heads had been contracted, would make no recovery.

I do not think that the mere ownership of stock in a corporation by an employee should be considered as raising any question as to his right of preference for wages earned as an employee and I can conceive of a case where a *bona fide* employee might be vested with the naked title of the office of president or manager of a corporation and still remain in fact a subordinate employee and entitled to the preference of said section 1204, but where, as here, the evidence is ample to show that plaintiff's assignor was actually the functioning president and manager of the employing corporation, then I hold that we may not, as an appellate court, disturb the conclusion and finding of the trial court that plaintiff's claim arises from services performed by the principal officer of the employer corporation and that such managing head is not entitled to the preference logically given by the statute to those who are truly employees.

The judgment should be affirmed.