## Gilbert Estate

*William S. Hudders* and *Donald E. Wieand*, for accountants.

*Paul M. Eyster*, for claimant.

GEARHART, P. J., December 8, 1955.—E. Warren Gilbert died May 2, 1954. His will was duly probated and letters granted, and the executors, Frank L. Newhard and The First National Bank of Allentown, have filed their account, which is before us for audit.

The estate is insolvent. The only problem presented is whether the claim of Elizabeth A. Snyder in the amount of $500 should be allowed as a preferred claim. The accountants have refused to accede to the demand of claimant that her claim be paid in full and, accordingly, the matter is now before the court for decision.

The facts have been agreed to by stipulation and show that claimant was employed by decedent as secretary and that she supervised the business office of decedent, including the making up of the payroll. On November 27, 1953, the checking account of decedent was insufficient to meet the payroll. To meet the payroll, claimant personally advanced the sum of $500 out of her own funds and deposited a check to the account of decedent, trading as W. H. Ryan & Company. The payroll checks were thereupon drawn on the account. Claimant continued to work for decedent up until the time of his death, for which she was paid $50 per week. Decedent had not repaid the loan to claimant up to the time of his death.

Claimant argues that she is entitled to a preference over general creditors in the distribution of this estate by reason of section 622 of the Fiduciaries Act of April

18, 1949, P. L. 512, 20 PS §320.622. Under subsection (3) priority is accorded: "The costs of the decedent's funeral and burial, and the costs of medicine furnished to him within six months of his death, of medical or nursing services performed for him within that time, and of services performed for him by any of his employees within that time."

Claimant advances two arguments: (1) That the loan of $500 to decedent was a service performed for decedent by the employe, the claimant, and (2) that claimant should receive priority of payment on the theory of equitable subrogation.

As to the first argument, the answer is that claimant was not employed for the purpose of lending money to her employer and that while her act in advancing the money was most meritorious, it can hardly be considered services performed by her as an employe. For her services as employe, she was paid $50 per week up until the time of the death of decedent. The lending of the money was an entirely gratuitous act on her part and cannot be regarded as services performed.

The purpose of section 622 of the Fiduciaries Act of 1949 is to favor certain classes of creditors and therefore it must be strictly construed and, as was remarked in McCracken v. Slemmer et al., 112 Pa. Superior Ct. 135, 137, "he who claims the benefit of class legislation must bring himself within its provisions": Davis v. Nanty Glo Auto Co. et al., 123 Pa. Superior Ct. 349, 351.

As to the second contention, viz., that claimant should be subrogated to the rights of the other wage earners, her case presents shortcomings which do not entitle her to the rights of subrogation. Thus, she was under no legal or moral obligation to advance this money, she had no agreement for subrogation with decedent or anyone else, nor did she take the trouble to seek an assignment from other employes

who were paid from the fund which she advanced to the company. Indeed, so far as the record appears, this was the ordinary loan to a business concern with the expectation that the owner of the business would repay it.

On the question of subrogation, in Home Owners' Loan Corp. v. Crouse et al., 151 Pa. Superior Ct. 259, the court said at page 262: " 'It always requires something more than the mere payment of a debt in order to entitle the person paying the same to be substituted in the place of the original creditor. A mere volunteer . . . who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation, or an assignment of the debt, pays the debt of another is not entitled to subrogation, the payment in his case absolutely extinguishing the debt.' "

Sheldon on Subrogation, sec. 240, quoted in Commonwealth Trust Co., Trustee (No. 1), 247 Pa. 508, 515, states the principle in these words: " 'The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, being under no legal obligation to make the payment and not being compelled to do so for the preservation of any rights or property of his own.' "

In A. L. I. Restatement of the Law of Restitution, §43, the comment on subsection (3) states: "In the absence of fraud or mistake, a person who lends money to another for the discharge of a lien upon property without an agreement for a new lien to be given to him upon the same property is not entitled to have the old lien reinstated although the new lien is not given."

Claimant has called our attention to what is stated in Remington on Bankruptcy, vol. 6, §2802, and urges that this forms some basis for allowing her claim.

However, on reading the section carefully, it will be seen that what the author states is that subrogation rights are recognized "either if the payer or lender was under an obligation, as surety, to take care of the obligation, or did so under an understanding or agreement that, upon doing so, he would stand in the shoes of the workmen". In the instant case claimant was under no obligation to advance this money, nor did she have any understanding or agreement with either decedent or any of the other employes. It was purely a voluntary act and, however commendable and meritorious the act was, we cannot under the statute referred to and under the law of subrogation as set forth above, allow the claim as a preferred one. See also Arnold Est., 78 D. & C. 76; In re L. H. Duncan & Sons, 46 F. Supp. 825; Remington on Bankruptcy, Vol. 6, §§2937 and 2941; 60 C. J. 716, §27, note (a), page 717.

Accordingly, we are constrained to rule that claimant is not entitled to priority, but will be paid on parity with the other general creditors which, we are informed, is about 74 cents on the dollar. . . .